IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 16-63231-pmb |
| KIMBERLY JACKSON, | CHAPTER:  13 |
| Debtor. | JUDGE:  PAUL BAISIER |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK, AS TRUSTEE FOR RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-RS8, | CONTESTED MATTER |
| Movant, | |
| v. | |
| KIMBERLY JACKSON, Debtor DONNIE T JACKSON, Co-Debtor ADAM M. GOODMAN, Trustee, | |
| Respondent(s). | |

**NOTICE OF HEARING**

**PLEASE TAKE NOTICE** that the Movant named above has filed a Motion for Relief from the Automatic Stay and the Co-Debtor Stay, as well as related papers with the Court seeking an Order Granting Relief from the Automatic Stay and the Co-Debtor Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1202, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, at 1:30P.M., on August 3, 2017.

**NOTICE TO CO-DEBTOR:**  This Motion seeks relief from the co-debtor stay pursuant to 11 USC Section 1301.  If you do not file and serve a written objection to this Motion within 20 days from the date this Motion was filed, the Motion may be granted and the co-debtor stay may be terminated.  Objections shall be filed with the Clerk, U.S. Bankruptcy Court, at the address shown in the next paragraph, and shall be served by U.S. Mail on the undersigned attorney whose name and address appear at the end of this notice.

**NOTICE TO DEBTOR:** Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

/s/ *Ciro A. Mestres*

Ciro A. Mestres, Bar No.: 840253
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: cmestres@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 16-63231-pmb |
| KIMBERLY JACKSON, | CHAPTER: 13 |
| Debtor. | JUDGE:  PAUL BAISIER |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK, AS TRUSTEE FOR RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-RS8, | CONTESTED MATTER |
| Movant, | |
| v. | |
| KIMBERLY JACKSON DONNIE T JACKSON, Co-Debtor ADAM M. GOODMAN, Trustee, | |
| Respondent(s). | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND THE CO-DEBTOR STAY

COMES NOW Movant named above and shows this Court the following:

1.      This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay and pursuant to Section 1301(c) of the Bankruptcy Code for relief from the co-debtor stay, for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property by a private power of sale contained in a certain Security Deed.

2.      Movant is the holder or the servicer of a loan secured by certain real property in

which the Debtor has an interest. Said real property is security for a Promissory Note, and is commonly known as 4000 Smithfield Lane, Ellenwood, GA 30294.

3.      Debtor executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Movant or has been duly indorsed. Movant, directly or through an agent, has possession of the promissory note. Movant is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

4.      There has been a default in mortgage payments which have come due since this case was filed. As of June 14, 2017, two (2) post petition payments of $1,388.01 each and two (2) post petition payment of $1,159.61, which totals to be $5,095.24 have been missed.

5.      Movant estimates the value of the property to be $140,400.00, based upon Debtor's Bankruptcy Schedule A.

6.      As of June 14, 2017, Movant's total claim is $185,722.33, consisting of unpaid principal balance of $114,015.32, Deferred Principal Balance of $67,228.35, accrued interest of $2,913.35, Late charge of $272.51, Property Inspection Fees of $92.75, Property Valuation Expense of $1.03, Review of plan/ Notice of Appearance of $400.00, escrow advance of $1,112.59, and less Pre-Petition Credit of $313.57. This is not an exact figure and may not be relied upon for payoff purposes.

7.      To the best of Movant's knowledge, information and belief, its lien is first priority. Movant has no knowledge, information or belief as to any other secured claims against the property.

8.      Because of the default and clear inability to make all required payments, Movant is not adequately protected. Movant's interest would also be irreparably harmed by the continuation of the co-debtor stay.

9.      Because the Loan Documents so provide, Movant is entitled to reasonable attorney's fees.

10.      Movant requests that in the event the Motion is granted, the Trustee be ordered to cease funding any balance of Movant's claim.

11.      Movant requests that the provisions of Fed. R. Bankr. P 4001(a)(3) be waived.

12.      Ocwen Loan Servicing, LLC services the underlying mortgage loan and note for the property referenced in this Motion for Relief for The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-RS8, and is entitled to proceed accordingly.  Should the Automatic Stay be lifted and/or set aside by Order of this Court or if this case is dismissed or if the debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will be conducted in the name of The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-RS8. The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-RS8 has the right to foreclose because it is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan.  The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-

Through Certificates, Series 2003-RS8, directly or through an agent has possession of the promissory note and the promissory note is either made payable to The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-RS8, or has been duly endorsed.

13.     Movant requests that upon entry of an Order Granting this Motion and Lifting the Stay, the Chapter 13 Trustee make no further payments on account of Movant's secured claim, that the secured portion of Movant's claim be deemed withdrawn without prejudice to Movant's right to file  an amended unsecured claim for any deficiency and that absent a stipulation or order to the contrary, Movant shall return to the Chapter 13 Trustee any payments received from the Trustee on account of Movant's secured claim, after entry of an Order Granting this Motion.

14.     Movant requests that it be permitted to contact the Debtor or Debtor's Counsel, as appropriate, through its agents, servicers and representatives for the purpose of engaging in discussions and consideration for possible loss mitigation options, solutions and resolutions, as appropriate with regard to the underlying Security Deed and Note, including, but not limited to loan modification or other loss mitigation alternatives.

WHEREFORE, Movant prays for an Order lifting the automatic stay and co-debtor stay, authorizing it to proceed with the exercise of its private power of sale and to foreclose under its Loan Documents and appropriate state statutes, and for an award of reasonable attorney's fees. Movant also prays that Fed. R. Bankr. P. 4001(a)(3) be waived. Movant also prays that the Chapter 13 Trustee make no further payments on account of Movant's secured claim, that Movant be permitted to contact the Debtor or Debtor's Counsel, as appropriate, through its agents, servicers and representatives for the purpose of engaging in discussions and consideration for possible loss mitigation options, and for such other and further relief as is just and equitable.

/s/ *Ciro A. Mestres*
Ciro A. Mestres, Bar No.: 840253
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: cmestres@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>KIMBERLY JACKSON,<br><br>     Debtor. | CASE NO. 16-63231-pmb<br><br>CHAPTER: 13<br><br>JUDGE: PAUL BAISIER |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK, AS TRUSTEE FOR RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-RS8,<br>     Movant,<br>v.<br><br>KIMBERLY JACKSON<br>ADAM M. GOODMAN, Trustee<br><br>     Respondents. | |

**DECLARATION IN SUPPORT OF**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**

I, _____Shilundra Lidell_____, declare under penalty of perjury as follows:

1.    I am employed as a __Contract Management Coordinator__ of Ocwen Loan Servicing, LLC and am authorized to sign this declaration on behalf of Ocwen Loan Servicing, LLC, as servicer for The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-RS8 (the "Movant"). This declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.      I make this declaration based upon my review of the records with regard to this underlying loan transaction, which are kept in the ordinary course of business of Ocwen Loan Servicing, LLC. As part of my job responsibilities for Ocwen Loan Servicing, LLC, I have personal knowledge of and am familiar with the types of records maintained by Ocwen Loan Servicing, LLC in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Ocwen Loan Servicing, LLC that pertain to the Loan and extensions of credit given to Debtor concerning the property securing such Loan.

3.      The information in this declaration is taken from Ocwen Loan Servicing, LLC's business records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Ocwen Loan Servicing, LLC's regularly conducted business activities; and (c) it is the regular practice of Ocwen Loan Servicing, LLC to make such records.

4.      The Debtor aka Kimberly L Jackson and Co-Signer Donnie T Jackson (collectively, the "Borrowers") have executed and delivered or are otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). The Debtor  aka Kimberly L Jackson and Co-Signer Donnie T Jackson (collectively, the "Borrowers")  have executed and delivered or are otherwise obligated with respect to that certain Security Deed referenced in the Motion (the "Security Deed"). Pursuant to that certain Security Deed referenced in the Motion (the "Security Deed"), all obligations of the Borrowers under and with respect to the Note and the Security Deed are secured by the property referenced in the Motion.

5.      As of June 14, 2017, there are one or more defaults in paying Borrowers post-petition amounts due with respect to the Note.

6.      As of June 14, 2017, the total unpaid principal balance is $181,243.67 which includes the unpaid principal balance of $114,015.32 and deferred principal balance of $67,228.35.

7.    The following chart sets forth those post-petition payments, due pursuant to the terms of the Loan Modification Agreement, that have been missed by the Borrowers as of June 14, 2017:

| Number of Missed Payments | From | To | Monthly Missed Principal and Interest | Monthly Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 2 | 3/1/2017 | 4/1/2017 | $778.50 | $609.51 | $1,388.01 | $ 2,776.02 |
| 2 | 5/1/2017 | 6/1/2017 | $778.50 | $381.11 | $1,159.61 | $ 2,319.22 |
| Less post-petition partial payments (suspense balance): | | | | | | $ 0.00 |

Total:    $5,095.24

8.    As of June 14, 2017, the total post-petition arrearage/delinquency is $5,495.24, consisting of (i) the foregoing total of missed post-petition payments in the amount of $5,095.24, plus (ii) the following post-petition fees:[1]

| Description | Amount |
|---|---|
| Review of Plan and Notice of Appearance | $400.00 |

---

[1] The total of missed postpetition payments for this escrow loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, postpetition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, movant will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total postpetition arrearage/delinquency is qualified accordingly.

9.      Attached as Exhibit A is a post-petition payment history.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on __27__ day of __June__, __2017__.

_____
Signature
Shilundra Lidell

_____
Name
Contract Management Coordinator

_____
Title

State of __FL__
County of __Palm Beach__

The foregoing instrument was acknowledged before me this __27th__ day of __June__ 20 __17__, by ____Shilundra Lidell____ as Contract Management Coordinator ____ for Ocwen Loan Servicing, LLC, who is the servicer for The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-RS8, who is personally known to me or who has produced _____ as identification.

_____
Signature of Notary Public

Name of Notary Public: ____Sonja Manderville____

Personally known: _____
OR Produced Identification: _____
Type of Identification Produced: _____

NOTARY PUBLIC STATE OF FLORIDA
Notary Public State of Florida
Sonja Manderville
My Commission FF 987290
Expires 04/28/2020

| Name: | Kimberly Jackson | | | | | | |
|---|---|---|---|---|---|---|---|
| BK Case Number: | 16-63231-pmb | | | | | | |
| Filing Date: | 8/1/2016 | | | | | | |
| Post First Due: | 9/1/2016 | | | Completed By: | kmpraffu | | |
| Post-Petition Due | Date Received | Amount Received | Amount Applied | Suspense Application | Suspense Balance | Comments |
| 9/1/2016 | 9/16/2016 | $ 1,388.01 | $ 1,388.01 | $ - | $ - | |
| 10/1/2016 | 10/3/2016 | $ 1,388.01 | $ 1,388.01 | $ - | $ - | |
| 11/1/2016 | 2/14/2017 | $ 1,388.01 | $ 1,388.01 | $ - | $ - | |
| 12/1/2016 | 2/17/2017 | $ 1,388.01 | $ 1,388.01 | $ - | $ - | |
| 1/1/2017 | 3/27/2017 | $ 1,388.01 | $ 1,388.01 | $ - | $ - | |
| 2/1/2017 | 4/17/2017 | $ 1,388.01 | $ 1,388.01 | $ - | $ - | |

EXHIBIT A

| Name: | Kimberly Jackson |
|---|---|
| BK Case Number: | 16-63231-pmb |
| Filing Date: | 8/1/2016 |
| Completed by: | **kmpraffu** |

| Due Date | Total Payment | Principal | Interest | Escrow | Optional Products | NOPC Filed Date |
|---|---|---|---|---|---|---|
| 3/1/2017 | $ 1,388.01 | $ 390.57 | $ 387.93 | $ 609.51 | $ - | |
| 4/1/2017 | $ 1,388.01 | $ 391.92 | $ 386.58 | $ 609.51 | $ - | |
| 5/1/2017 | $ 1,159.61 | $ 393.26 | $ 385.24 | $ 381.11 | $ - | 3/29/2017 |
| 6/1/2017 | $ 1,159.61 | $ 394.61 | $ 383.89 | $ 381.11 | $ - | |
| **Total Due** | **$ 5,095.24** | **$ 1,570.36** | **$ 1,543.64** | **$ 1,981.24** | **$ -** | |

EXHIBIT A

# NOTE

AUGUST 6TH, 2003                    ATLANTA                                    GEORGIA
[Date]                             [City]                                      [State]

4000 SMITHFIELD LANE, ELLENWOOD, GA 30294

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 192,250.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is    HOMECOMINGS FINANCIAL NETWORK, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of    10.7500    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   FIRST   day of each month beginning on   OCTOBER 1ST, 2003    . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on SEPTEMBER 1ST, 2033   , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at   2101 Rexford, Suite 168W, CHARLOTTE, NC 28211
                                              or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $        1,794.62  .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP-5N (0207)                     Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                      Initials            MFCD6054 - (11/02) / 041-802817-1

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.00              % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DONNIE T JACKSON          -Borrower

_____ (Seal)
KIMBERLY L JACKSON          -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

PAY TO THE ORDER OF
JP MORGAN CHASE BANK, AS TRUSTEE
WITHOUT RECOURSE
_____ (Seal)          Residential Funding Corporation          _____ (Seal)
-Borrower          BY _____          -Borrower
          Judy Faber, Vice President

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF
RESIDENTIAL FUNDING CORPORATION          [Sign Original Only]
_____
MICHAEL LIND
ASSISTANT SECRETARY
HOMECOMINGS FINANCIAL NETWORK, INC.
A DELAWARE CORPORATION

**Loan #** ████████████

# ALLONGE

This endorsement is a permanent part of the Note dated 8/6/2003 in the amount of $192,250.00

**BORROWER(S):**   **DONNIE T JACKSON AND KIMBERLY L JACKSON**

**PROPERTY:**   **4000 SMITHFIELD LANE**
**ELLENWOOD, GA 30294**

**PAY TO THE ORDER OF:**

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK
OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK, AS TRUSTEE
FOR RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC., MORTGAGE ASSET-BACKED PASS-
THROUGH CERTIFICATES, SERIES 2003-RS8

**WITHOUT RECOURSE:**

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK
OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK, AS TRUSTEE
BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC

**Signer:** Daria Gurewich
**Title: Authorized Signer**

Deed Book **15106** Pg **129**
Filed and Recorded Aug-21-2003 09:08am
**2003-0156462**
Georgia Intangible Tax Paid $577.50

*Linda Carter*
Linda Carter
Clerk of Superior Court Dekalb Cty. Ga.

Return To:

HOMECOMINGS FINANCIAL NETWORK, INC
ONE MERIDIAN CROSSING, STE 100
MINNEAPOLIS, MN 55423
**Loan Number:** 041-802817-1



Prepared By:     HomeComings Financial Network
                2101 Rexford, Suite 168W
                Charlotte, NC  28211

———————————————[Space Above This Line For Recording Data]———————————————

# SECURITY DEED
MIN ▮▮▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   AUGUST 6TH, 2003                  ,
together with all Riders to this document.
**(B) "Borrower"** is
KIMBERLY JACKSON AND DONNIE JACKSON

Borrower is the grantor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the grantee under
this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**GEORGIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**          Form 3011  1/01
MFGA7770 (11/00) / 041-802817-1
⟨VMP⟩ -6A(GA) (0005)
Page 1 of 14                          Initials
VMP MORTGAGE FORMS - (800)521-7291

**(D) "Lender"** is   HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a   CORPORATION
organized and existing under the laws of   DELAWARE
Lender's address is   2101 Rexford, Suite 168W
CHARLOTTE, NC 28211
**(E) "Note"** means the promissory note signed by Borrower and dated AUGUST 6TH, 2003
The Note states that Borrower owes Lender   ONE HUNDRED NINETY TWO THOUSAND TWO
HUNDRED FIFTY AND NO/100                                          Dollars
(U.S. $   192,250.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than SEPTEMBER 1ST, 2033
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

**WAIVER OF BORROWERS RIGHTS & CLOSING
ATTORNEYS AFFIDAVIT**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

MFGA7770 (11/00) / 041-802817-1

VMP -6A(GA) (0005)

Page 2 of 14

Initials: _____

Form 3011  1/01

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY                                of DE KALB                                    :
    [Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]
Legal description attached hereto and made a part hereof

Parcel ID Number:  N/A                              which currently has the address of
4000 SMITHFIELD LANE                                            ,              [Street]
ELLENWOOD                              [City]  , Georgia        30294    [Zip Code]
("Property Address"):

        TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

MFGA7770 (11/00)  /  041-802817-1                    Initials: _____
    -6A(GA) (0005)                  Page 3 of 14                      Form 3011  1/01

Deed Book 15106 Pg 132

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

MFGA7770 (11/00)  /  041-802817-1
VMP -6A(GA) (0005)                    Page 6 of 14         Initials                Form 3011  1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

MFGA7770 (11/00) / 041-802817-1

VMP®-6A(GA) (0005)

Page 9 of 14

Initials:

Form 3011  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MFGA7770 (11/00) / 041-802817-1
-6A(GA) (0005)

Page 12 of 14

Initials: [signature]

Form 3011  1/01

Deed Book 15106 Pg 141

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.**

**If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

Deed Book 15106 Pg 142

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)    _____ (Seal)
DONNIE T JACKSON        -Borrower    KIMBERLY L JACKSON    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

**STATE OF GEORGIA,**               County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,              County
State of Georgia

SHANNON MOORE
NOTARY
EXPIRES
GEORGIA
MAY 14, 2005
PUBLIC
GWINNETT COUNTY

MFGA7770 (11/00)  /  041-802817-1
VMP®  -6A(GA) (0005)        Page 14 of 14        Form 3011  1/01

Deed Book 15106 Pg 143

**EXHIBIT "A"**

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 21 OF THE 15TH DISTRICT, DEKALB COUNTY, GEORGIA, BEING LOT 42, BLOCK A, SMITHFIELD GROVE, AS PER PLAT RECORDED IN PLAT BOOK 134, PAGE 83-92, DEKALB COUNTY, GEORGIA RECORDS, SAID PLAT BEING INCORPORATED HEREIN AND MADE REFERENCE HERETO.**

Deed Book 15106 Pg 144

GEORGIA -

Linda Carter
Clerk of Superior Court Dekalb Cty. Ga

GRANTOR: DONNIE T JACKSON, KIMBERLY L JACKSON

LENDER: HOMECOMINGS FINANCIAL NETWORK, INC.

DATE OF SECURITY DEED: AUGUST 6, 2003

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____ (Seal)
DONNIE T JACKSON                -Grantor

_____ (Seal)
KIMBERLY L JACKSON             -Grantor

_____ Notary Public

_____ (Seal)
                               -Grantor

_____ (Seal)
                               -Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me

_____ Notary Public

on the date set forth above.

_____ Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
DONNIE T JACKSON

_____
KIMBERLY L JACKSON

23636 Pg 321

Filed and Recorded
03/13/2013 12 04 23 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County Georgia

When Recorded Return To
Indecomm Global Services
2925 Country Drive
St Paul, MN 55117

## Assignment of Security Deed

Dated **March 7, 2013**

MIN ▮▮▮▮▮▮

MERS Phone 888-679-6377

For value received **Mortgage Electronic Registration Systems, Inc , as nominee for Homecomings Financial Network, Inc , its successors and assigns,** P O Box 2026, Flint, MI 48501-2026, the undersigned hereby grants, assigns and transfers to **The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N A as successor to JPMorgan Chase Bank N A., as Trustee for RAMP 2003-RS8, In C/O Ocwen Loan Servicing, LLC, 1100 Virginia Drive, Fort Washington, PA 19034,** all its rights and interest under a certain Security Deed dated **August 6, 2003** executed by **KIMBERLY JACKSON AND DONNIE JACKSON** and recorded in Book **15106** on Page(s) **129** as Document Number **2003-0156462** on **August 21, 2003** of the official records of the Clerk of Superior Court of Dekalb County, Georgia

**MORTGAGE AMOUNT $192,250 00**

**WITNESSES**

_____
Witness 1 Peter Chang

_____
Witness 2 Va Thao

Mortgage Electronic Registration Systems, Inc ,
as nominee for Homecomings Financial Network,
Inc , its successors and assigns

By _____

**Kia Vang,**
**Assistant Secretary**

By _____

**Lisa Marie Spurbeck,**
**Assistant Vice President**
No Corporate Seal

STATE OF **Minnesota**        )
COUNTY **Ramsey**        ) SS

On **March 7, 2013** before me, **Bao Cindy Fang** , **Notary Public** in and for said State personally appeared **Kia Vang** , **Assistant Secretary** and **Lisa Marie Spurbeck** , **Assistant Vice President** of **Mortgage Electronic Registration Systems, Inc , as nominee for Homecomings Financial Network, Inc** , its successors and assigns, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument WITNESS my hand and official seal

Prepared By
Lisa Vang
2925 Country Drive
St Paul, MN 55117

_____
Bao Cindy Fang, Notary Public
My Commission expires **January 31, 2017**

BAO CINDY FANG
Notary Public-Minnesota
My Commission Expires Jan 31, 2017



DEED BOOK 26090 <sup>Pg</sup> 579

Filed and Recorded:
2/21/2017 9:13:28 AM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Recording Requested By: ALDRIDGE PITE, LLP
When Recorded Return To Attn: R. Lindsey - Foreclosure Dept.
Atlanta, GA 30305

Fifteen Piedmont Center
3575 Piedmont Rd., N.E., Suite 500

### CORPORATE ASSIGNMENT OF SECURITY DEED

DeKalb, Georgia



SELLER'S SERVICING #:          JACKSON"
SELLER'S LENDER #:
OLD SERVICING #:

MIN #:                SIS #:

Date of Assignment: February 1st, 2017
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR
HOMECOMINGS FINANCIAL NETWORK, INC., ITS SUCCESSORS AND/OR ASSIGNS at PO BOX 2026 FLINT MI
48501, 1901 E VOORHEES ST, STE C, DANVILLE, IL 61834
Assignee: THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF
NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK, AS TRUSTEE FOR
RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH
CERTIFICATES, SERIES 2003-RS8 at C/O OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100,
WEST PALM BEACH, FL 33409

Executed By: KIMBERLY JACKSON AND DONNIE JACKSON To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC., ITS
SUCCESSORS AND/OR ASSIGNS
Date of Security Deed: 08/06/2003 Recorded: 08/21/2003 in Book/Reel/Liber: 15106 Page/Folio: 129 as Instrument
No.: 2003-0156462 In the County of DeKalb, State of Georgia.

Property Address: 4000 SMITHFIELD LANE, ELLENWOOD, GA 30294

Legal: See above referenced recorded Security Deed for full legal description

THE PURPOSE OF THIS CORRECTIVE ASSIGNMENT OF SECURITY DEED IS TO CORRECT THE ASSIGNEE ON
THE ASSIGNMENT RECORDED ON 03/13/2013 IN BOOK 23636 AT PAGE 321 AS INSTRUMENT NUMBER
2013051908.

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Security
Deed having an original principal sum of $192,250.00 with interest, secured thereby, and the full benefit of all the powers
and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said
Assignee, the Assignor's interest under the Security Deed.

    TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject to the
terms contained in said Security Deed.

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR
HOMECOMINGS FINANCIAL NETWORK, INC., ITS SUCCESSORS AND/OR ASSIGNS
On ___FEB 0 1 2017___

By: _____,                    By: _____,
      Leonora Williams                                          Joe A. Simmons
      Vice President                                            Assistant Secretary

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS _____
                    Venessa Francis
_____

NOTARY WITNESS

STATE OF FLORIDA
COUNTY OF PALM BEACH

Subscribed and sworn to (or affirmed) before me on ___FEB 0 1 2017___, by ___Leonora Williams___, Vice
President ___Joe A. Simmons___ Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC., ITS
SUCCESSORS AND/OR ASSIGNS, proved to me on the basis of satisfactory evidence to be the person(s) who
appeared before me.

WITNESS my hand and official seal,

_____
      Yenifer Lorenzo
Notary Expires: 5-3-2019

Notary Public State of Florida
Yenifer Lorenzo
My Commission FF 226257
Expires 05/03/2019

(This area for notarial seal)

-FB-PRA

Investor Loan # _____
**After Recording Return To:**
_____
_____
_____
_____
This document was prepared by _____
_____**[Space Above This Line For Recording Data]**_____ _____

**HOME AFFORDABLE MODIFICATION AGREEMENT**

## (Step Two of Two-Step Documentation Process)

Borrower(s) ("I"): **Donnie T Jackson Kimberly L Jackson**

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): **8/6/2003**

Loan Number: ██████████

Property Address: **4000 Smithfield Ln  Ellenwood, GA 30294** ("Property")
*[and Legal Description if recordation is necessary]*

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations.** I certify, represent to Servicer and agree:

    A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.   I live in the Property as my principal residence, and the Property has not been condemned;

    C.   There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.   I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E.   Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.   If Servicer requires me to obtain credit counseling in connection with the Program, I will do so;

    G.   I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

Page 1 of 8

-FB-PRA

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Agreement;

B. If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 1/1/2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 1/1/2015.

A. The new Maturity Date will be: 11/1/2033, at which time a final balloon payment in an amount equal to all remaining amounts owed under the Loan Documents will be due.

B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $223,392.52 (the "New Principal Balance").

C. $100,842.52 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $100,842.52 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 10/1/2014, the Servicer shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $122,550.00. Interest at the rate of 4.12500% will begin to accrue on the Interest Bearing Principal Balance as of 12/1/2014 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 1/1/2015. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-Loans Maturity | 4.12500% | 12/1/2014 | $778.50 | $339.76, adjusts annually after year 1 | $1,118.26, adjusts annually after year 1 | 1/1/2015 | 227 |
| - | - | - | - | - | - | | - |
| - | - | - | - | - | - | | - |
| - | - | - | - | - | - | | - |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step or simple interest rate.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

OLS Form (rev. 1/13)

-FB-PRA

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full (1) the Deferred Principal Balance (deferred principal balance will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the deferred principal balance.), if any, and (2) any other amounts still owed under the Loan Documents, by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance (The new principal balance less the deferred principal balance shall be referred to as the "interest bearing principal balance), or (iii) the new Maturity Date.

G.  If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  **Additional Agreements.**  I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

OLS Form (rev. 1/13)

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E.   That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F.   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.   That, as of the Modification Effective Date, I understand that the Servicer will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J.   If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

K.   That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void.

L.   Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

M.   Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026 Flint, MI 48501-2026, (888) 679-MERS. In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

N.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

OLS Form (rev. 1/13)

-FB-PRA

☐ *If this box is checked, Borrower(s) signature must be notarized.*

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here→ *Donnie T. Gal*       10  ,  27  ,  2014  Date

Donnie T Jackson

State of Georgia)

County of _____ )

On _____ before    me, _____ personally    appeared
_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Georgia that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date _____/_____/_____

Personally Known_____ OR Produced Identification

Type of Identification Produced_____

---

Sign Here→ *Kimberly L. Jackson*  10 , 27 , 2014  Date

Kimberly L Jackson

State of Georgia)

County of _____ )

On _____ before    me, _____ personally    appeared
_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Georgia that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date_____/_____/_____

Personally Known_____ OR Produced Identification_

Type of Identification Produced_____

OLS Form (rev. 1/13)

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here→ _____   ____/____/_____ Date
State of Georgia)
County of _____)
On _____ before me, _____personally appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Georgia that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

---

Sign Here→ _____   ____/____/_____ Date
State of Georgia)
County of _____)
On _____ before me, _____personally appeared
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Georgia that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

_____  DEC 2 4 2014
Servicer   Joseph Monaco

BY _____
Joseph Monaco   Authorized Officer

Date
If applicable: _____
Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

Page 6 of 8

OLS Form (rev. 1/13)

-FB-PRA

## BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"): Donnie T Jackson Kimberly L Jackson

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):

Loan Number: ▮▮▮▮▮▮▮▮

Property Address: 4000 Smithfield Ln  Ellenwood, GA 30294

THIS BALLOON PAYMENT DISCLOSURE is made this 22 day of October, 2014, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement. The Agreement also contains a principal reduction feature that may reduce the Deferred Principal Balance in three equal installments of   $33,614.17 in accordance with Section 3(C) of the Agreement, provided that the Borrower remains eligible for principal reduction for the time period specified in Section 3(C) of the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments. This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

If the Borrower remains eligible for the time period specified in the following table, the Deferred Principal Balance will be adjusted to the amounts reflected in the table.

| Duration of Eligibility | Deferred Principal Balance due on Maturity |
|---|---|
| 1/1/2015 up to 10/1/2015 | $100,842.52 - NO ADJUSTMENT |
| 10/1/2015 up to 10/1/2016 | $67,228.35 |
| 10/1/2016 up to 10/1/2017 | $33,614.18 |
| 10/1/2017 up to 11/1/2033 | $000.00 |

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: AN INSTALLMENT OF   $000.00 WILL BE DUE AND PAYABLE IN FULL ON 11/1/2033, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM.   The balloon payment on the loan modification I have applied for is due 227 months from the effective date of the modification.

*Notice required by North Dakota law:*

**CAUTION TO BORROWER:  IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN.  KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN MODIFICATION THAT YOU OBTAIN AT THIS TIME.**

If I cannot pay the balloon payment when due, I may have to obtain a new loan to make the balloon payment or I may lose my property through foreclosure. Before deciding to take this loan, I will consider my ability to pay the balloon payment when it comes due. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

OLS Form (rev. 1/13)

-FB-PRA

NEITHER OCWEN LOAN SERVICING, LLC NOR ANY LENDER TO WHICH THIS LOAN IS TRANSFERRED IS UNDER ANY OBLIGATION TO FINANCE THE AMOUNT OF THE BALLOON PAYMENT.  THEREFORE, I MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER TO REFINANCE THE LOAN.

ASSUMING THE OWNER OF MY LOAN OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.  I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

**\*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.**

SIGN

_____
Borrower

Date    10/27/2014

SIGN

_____
Borrower

Date    10/27/2014

OLS Form (rev. 1/13)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | Case No. 16-63231-PMB |
| KIMBERLY JACKSON, | Chapter 13 |
| Debtor. | |

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on the July 6, 2017, I served a copy of **Notice of Hearing and Motion for Relief from the Automatic Stay and Co-Debtor Stay** which was filed in this bankruptcy matter on the July 6, 2017, in the manner indicated:

**The following parties have been served via e-mail**:

E. L. Clark
ecfnotices@cw13.com

Adam M. Goodman
mail@13trusteeatlanta.com

**The following parties have been served via U.S. First Class Mail**:

Kimberly Jackson
4000 Smithfield Ln
Ellenwood, GA 30294

Donnie T Jackson
4000 Smithfield Ln
Ellenwood, GA 30294

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: July 6, 2017

/s/ *Ciro A. Mestres*

Ciro A. Mestres, Bar No.: 840253
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: cmestres@aldridgepite.com